CLAUDEAN E. EDWARDS v. DR. ROBERT L. MEANS

No. 7721SC242

(Filed 18 April 1978)

**Physicians, Surgeons and Allied Professions § 16.1— surgery without consulting x-ray— summary judgment for surgeon improper**

In an action against defendant surgeon to recover damages for injury to plaintiff's finger, the trial court erred in entering summary judgment for defendant where plaintiff's complaint and deposition raised an issue as to whether defendant acted properly in attempting to remove a foreign body from plaintiff's finger without first consulting x-rays.

APPEAL by plaintiff from *Albright, Judge.* Judgment entered 13 January 1977 in Superior Court, FORSYTH County. Heard in the Court of Appeals 20 January 1978.

This is an action for malpractice against defendant, a physician engaged in the general practice of surgery. Plaintiff appeals from the allowance of defendant's motion for summary judgment.

*White and Crumpler, by Michael J. Lewis, for plaintiff appellant.*

*Hudson, Petree, Stockton, Stockton & Robinson, by James H. Kelly, Jr., for defendant appellee.*

VAUGHN, Judge.

Summary judgment is an extreme remedy and should be awarded only where the truth is quite clear and undisputed. It is improper unless the pleadings, depositions, answers to interrogatories, admissions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lee v. Shor*, 10 N.C. App. 231, 178 S.E. 2d 101 (1970). In the case at bar, we conclude that the pleadings and other documents relied on by the judge are insufficient to carry defendant's burden of showing the absence of a triable issue and do not show that defendant is entitled to judgment as a matter of law.

Plaintiff's deposition, in part, is as follows. In March, 1973, she got a piece of glass in her right index finger. She could not see the object or any cut on the finger, but she had discomfort in the finger for several weeks. On 10 April 1973, she had her finger x-rayed at the hospital emergency room and learned that the x-ray revealed a foreign body in her finger. On 12 April 1973, she visited defendant, a surgeon, seeking removal of the foreign body. She showed defendant as best she could where the foreign body had gone into her finger, informed defendant that x-rays had been taken and asked whether these should be examined before removal of the foreign body. Defendant stated that such examination was not necessary because he thought he could feel the foreign body. Defendant then made an incision in the finger, probed for 45 minutes, stated that he had removed a tiny hair and sewed up the finger. Plaintiff continued to have the sensation of some foreign body in the finger, and more x-rays were made. These x-rays revealed the presence of a foreign body in the finger so defendant again cut open plaintiff's finger and removed some tissue. This second incision was made at the hospital with the use of a visual intensifier and x-rays and was made along the same lines as the first incision. After the second operation, x-rays no longer showed a foreign body in the finger although defendant

stated that he never saw a foreign body in the tissue which he removed. Plaintiff's finger healed and caused her no problem until July, 1973, when she suddenly began experiencing continued pain in the finger. Defendant referred plaintiff to another doctor, a plastic surgeon. Plaintiff was also referred to three additional doctors, who all prescribed use of the finger and massage, before being referred to Dr. Goldner, an orthopaedic hand specialist, in February, 1974.

Dr. Goldner treated her for two years, prescribing use and massage of the finger and various medications for the pain, until additional surgery was performed by him in April, 1976. The surgery resulted in some diminution of the pain and improvement in the appearance of the finger. Dr. Goldner testified on deposition that when he first began treating plaintiff an examination of her finger revealed that tissues in the tip of the finger had shrunk slightly, there was a slight loss of bone density due to limited use of the finger and there was tenderness over the bone. He prescribed an exercise program and various other treatments until 1976 when he agreed to operate because plaintiff was still experiencing pain. In the operation he removed scar tissue and elevated pulp or soft tissue onto the tip of the finger. No foreign material was found and his diagnosis at the time of surgery was fibrosis, or scar tissue caused by the original entry of the foreign body into the finger and the incisions to remove the foreign body, atrophy of the subcutaneous fat and chronic pain syndrome related to thin skin on the pad of the finger. He further stated that he is familiar with the standard medical practice in the community for removal of a foreign body from a finger and it includes the obtaining of x-rays to determine if the foreign body is present followed by a decision as to whether to remove it. In his opinion an examination of an x-ray prior to removal is desirable and helpful but may not be absolutely necessary where one knows that an x-ray has revealed a foreign body, there is a point of tenderness and one can feel where the foreign body is located. In his opinion plaintiff's fibrosis was caused by a series of events including the original entry of the foreign body, the incisions to remove the foreign body and the resulting change in the size and shape of the fingertip.

Defendant's affidavit stated that he did not feel it necessary to examine the x-rays of plaintiff's finger prior to attempting

removal of the foreign body because he could feel the scar tissue in her finger which normally surrounds a foreign body, could see a scar on plaintiff's finger where the foreign body had entered and was informed by plaintiff as to what had entered her finger and where.

Defendant also filed affidavits of two surgeons practicing in the area, Drs. Nolan and Rabil. Each states that he is familiar with the standards of surgical practice utilized and accepted in the community. They further state that, having reviewed plaintiff's complaint and deposition and defendant's affidavit, they are of the opinion that the procedures followed by defendant were in accordance with that standard and accepted practice and that the condition of plaintiff's finger was not the result of defendant's failure to use x-rays during the first removal procedure.

As indicated, we conclude that it was error to enter summary judgment in favor of defendant. Indeed, it is only in exceptional negligence cases that Rule 56 can be invoked. "This is so because even in a case in which there may be no substantial dispute as to what occurred, it usually remains for the jury, under appropriate instructions from the court, to apply the standard of the reasonably prudent man to the facts of the case in order to determine where the negligence, if any, lay and what was the proximate cause of the aggrieved party's injuries." *Robinson v. McMahan*, 11 N.C. App. 275, 280, 181 S.E. 2d 147, 150 (1971). In our view, defendant has not, by competent evidence, conclusively shown that his conduct, alleged to be a proximate cause of plaintiff's distress, was in all respects that of a reasonably prudent person under the circumstances. For that reason, the judgment is reversed.

Reversed.

Judges BRITT and ERWIN concur.